# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TONI A. CARRAN**, | CIVIL ACTION |
| *Plaintiff*, | |
| | NO. |
| v. | |
| | |
| **PENNSYLVANIA TURNPIKE COMMISSION**, | |
| *Defendant*. | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Toni A. Carran ("Plaintiff" or "Carran"), by and through her counsel, files the within Complaint against her former employer, Defendant, Pennsylvania Turnpike Commission ("Defendant" or "PTC"), and avers as follows:

### Preliminary Statement

1. Carran brings this action against PTC for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101, *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*

2. Carran was employed by PTC as a Supplemental Toll Collector for approximately eight (8) months. During her tenure with PTC, Carran performed all of her duties and job responsibilities in a competent and satisfactory manner, and she was never issued any discipline. However, when Carran informed PTC of her disability and need for reasonable accommodation, rather than taking any steps to

engage with Carran in the interactive process, PTC simply decided to summarily fire her. As such, Carran has suffered significant emotional and monetary damages.

## Jurisdiction

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the ADA. This Court also has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

## Venue

4. Venue is properly laid in this district under 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this district, and Defendant's headquarters are located within the Middle District of Pennsylvania.

## Conditions Precedent

5. Carran timely filed a Charge of disability discrimination and retaliation with the with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2016-01589. This Charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

6. Thereafter, the EEOC issued a written Determination concluding, *inter alia*, that reasonable cause exists "to believe that [PTC] violated the ADA by abandoning the interactive process, failing to effectively accommodate [Carran]

because of her disability, and ultimately discharging her because of her disability and protected activity." A true and correct copy of the EEOC's Determination is attached hereto as **Exhibit A**.

7. By letter dated January 23, 2018, the EEOC issued Carran a Notice of Right to Sue. A true and correct copy of the Notice of Right to Sue is attached hereto as **Exhibit B**.

8. This Complaint is being filed within ninety (90) days of receipt of the Notice of Right to Sue, and more than one (1) year has passed since Carran dual-filed her Charge with the PHRC. Accordingly, Carran has fully complied with all prerequisites to jurisdiction in this Court under the ADA and the PHRA.

## Parties

9. Plaintiff is an adult individual and resides in Halifax, Pennsylvania.

10. Defendant, a non-governmental corporation, is an instrumentality of the Commonwealth of Pennsylvania responsible for the operation of the Pennsylvania Turnpike.

11. At all times relevant to the allegations in this Complaint, Defendant has employed more than fifteen (15) employees.

12. At all times relevant to the allegations in this Complaint, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times in the course and scope of their employment with and for Defendant.

**Facts**

13. Carran began working for PTC on or about December 26, 2014 as a Supplemental Toll Collector.

14. During her employment with PTC, Carran performed her duties and job responsibilities in a competent and satisfactory manner, and she was never issued any discipline.

15. Carran, having been diagnosed with panic disorder and bipolar disorder in or around May 2003 and April 2012, respectively, has a disability within the meaning of the ADA and the PHRA. As a result of her disability, certain major life activities—such as interacting with others, concentrating, thinking, and communicating—are substantially limited when Carran experiences a flare-up of her medical condition.

16. On August 25, 2015, Carran experienced a flare-up of her medical condition.

17. Shortly thereafter, on August 31, 2015, Carran provided PTC with a letter from her physician, which requested a brief (one week) medical leave of absence and states:

> I have recommended a medical leave for Ms. Toni Carran starting on August 28, 2015 and running through September 3, 2015 with a tentative return to work date of September 4, 2015. If at all possible, reassigning her to a location where she would not be working alone would be very helpful to her treatment.

18. The next day, September 1, 2015, Carran emailed Catherine Clements-Jenkins, PTC's Equal Employment/ADA Officer, and stated:

> I wanted to make you aware that I notified an [Interchange Manager] and the union representative for the supplemental employees that I am working on getting paperwork completed between you and my doctor. I was told not to be surprised if this leads to my termination. This is only perpetuating my anxiety and making it more difficult for me to get back on my feet. I'm trying so hard to do everything that I can to protect my job, which I do not want to lose, and get my health improved. If you know of anyone else who could help me work through this in the HR department, please let me know!

19. On Friday, September 4, 2015, Carran's physician provided to PTC, via fax, a completed ADA Information Request Form which, *inter alia*, identified the following recommended workplace accommodations:

> a. Ms. Carran has been very stressed by working alone. Please consider the accommodation of reassigning her to a post where she would not be working alone.
>
> b. Ms. Carran would also benefit from being able to take intermittent leave in case of severe panic attacks, i.e. 1-2 days once or twice a month.
>
> c. Working alone has triggered a panic attack which caused Ms. Carran to have to leave her post and be relieved at a site where she was working alone. Needless to say, this was very problematic, and if she continues to work alone, it is not possible to be sure it would not happen again.

20. By letter dated September 4, 2015 (i.e. the very same day it received the ADA Information Request Form from Carran's physician), the PTC informed Carran, *inter alia*, "After careful review of your accommodation request and the

information provided by your physician, the Commission determined that there is no reasonable accommodation we can provide you at this time."

21. Significantly, PTC did not suggest, propose, or recommend a single accommodation in response to Carran's request.

22. Rather, PTC stated that, "due to contractual obligations," reassigning Carran to a different position or shift "would not be possible." Notwithstanding the fact that Carran's requested accommodations were not limited to reassignment, a number of exceptions have previously been made by PTC to these "contractual obligations," rendering them meaningless with respect to the accommodation at issue.

23. Moreover, even though PTC had refused to provide Carran with any reasonable accommodation, it could have simply allowed her the opportunity to return to work as scheduled and recommend by her physician. It did not.

24. Indeed, rather than engage in the interactive process to address Carran's request for an accommodation, PTC decided to summarily fire her on September 8, 2015, i.e. approximately one week after becoming aware of Carran's status as an individual with a disability.

25. According to Carran's termination letter dated September 10, 2015, which was signed by Sheri Norris, Director of Human Resources:

> The reason for this termination is exceeding three (3) workdays of unauthorized leave (6.75) hours on August 25, and 8 hours each day on

August 28, 29, and 30, 2015), which is a violation of Article 15, Section 6.C, of the Collective Bargaining Agreement.

26. Nowhere in the termination letter does it mention Carran's request for accommodation.

27. As discussed *supra*, August 28, 29, and 30, 2015 were all dates that fell within the medical leave of absence recommended by Carran's physician.

28. Non-disabled Supplemental Toll Collectors are treated more favorably in that their (alleged) unauthorized absences are met with progressive discipline, as opposed to immediate termination.

29. After becoming aware of Carran's disability status, PTC acted swiftly and decisively to terminate her employment on pretextual grounds; it made no effort whatsoever to offer a single accommodation that would allow Carran to continue working.

## COUNT I
### Violations of the ADA
### (1) Discrimination; (2) Failure to Accommodate; and (3) Retaliation

30. The foregoing paragraphs are incorporated by reference in their entirety as though set forth in full herein.

31. Carran is a qualified individual with a disability within the meaning of the ADA.

32. Carran could perform the essential functions of her position with or without reasonable accommodation.

33. Carran notified PTC about her disability and requested consideration of certain reasonable accommodations that would assist her in carrying out the essential functions of her position.

34. PTC refused to engage in the interactive process and denied Carran's requests "due to contractual obligations."

35. PTC terminated Carran's employment approximately one week after it became aware of her medical condition and corresponding accommodation request.

36. PTC's alleged reason for terminating Carran's employment is a pretext for its unlawful discriminatory and/or retaliatory actions.

37. PTC terminated Carran because of her: (1) request for accommodation; (2) known medical conditions; (3) perceived medical conditions; and/or (4) record of impairment.

38. Carran has suffered damages as a result of PTC's unlawful actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

39. PTC intentionally violated Carran's rights under the ADA with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT II
### Violations of the PHRA (*Handicap or Disability*)
### (1) Discrimination; (2) Failure to Accommodate; and (3) Retaliation

40. Plaintiff incorporates the foregoing allegations by reference as though set forth in full herein.

41. Carran has a handicap or disability within the meaning of the PHRA.

42. Carran could perform the essential functions of her position with or without reasonable accommodation.

43. Carran notified PTC about her handicap or disability and requested consideration of certain reasonable accommodations that would assist her in carrying out the essential functions of her position.

44. PTC refused to engage in the interactive process and denied Carran's requests "due to contractual obligations."

45. PTC terminated Carran's employment approximately one week after it became aware of her medical condition and corresponding accommodation request.

46. PTC's alleged reason for terminating Carran's employment is a pretext for its unlawful discriminatory and/or retaliatory actions.

47. PTC terminated Carran because of her: (1) request for accommodation; (2) known medical conditions; (3) perceived medical conditions; and/or (4) record of impairment.

48. Carran has suffered damages as a result of PTC's unlawful actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

WHEREFORE, Plaintiff respectfully requests that Judgment be entered in her favor that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all payments and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amounted believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future.

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress, pain, and suffering).

D. Plaintiff is to be awarded the costs and expenses of this action and her reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**PILLAR+AUGHT**

By: /s/ *Todd Shill*
Todd J. Shill, Esq.
Attorney I.D. No. 69225 (PA)
tshill@pillaraught.com
John R. Martin, Esq.
Attorney I.D. No. 204125 (PA)
jmartin@pillaraught.com
4201 E. Park Circle
Harrisburg, PA  17111
(717) 308-9910

Dated: April 23, 2018